IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN PHILIP HULL, an individual, and ZOOMERS, a sole proprietorship,<br><br>   Plaintiffs,<br><br> v.<br><br>ROTHHAMMER INTERNATIONAL, INC., a corporation,<br><br>   Defendant. | No. C 05-03538 WHA<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT AND DISMISSING CLAIM FOR BREACH OF CONTRACT** |

## INTRODUCTION

This patent-infringement action is barred by a previous settlement and license between the same parties. Judgment for defendant will be entered without prejudice to plaintiffs suing on the license in state court.

## STATEMENT

On July 12, 1995, the exact same plaintiffs filed a patent infringement claim against the exact same defendant in this district court. *Hull, et al. v. Rothhammer Int'l, Inc.*, C-95-02528-MHP. Plaintiffs Martin Philip Hull and Zoomers alleged that defendant Rothhammer International, Inc. infringed two patents issued to Hull: United States Patent Nos. 4,948,385 and 5,108,328. These patents described a design for training fins for swimming.

On March 20, 1996, the parties entered into a settlement and licensing agreement (Reply Br. Exh. A).[1] Producing a copy of this agreement has proved to be an issue of some difficulty and contention, as addressed below. Putting these issues to one side, the *content* of the agreement is not in dispute. Several provisions are of particular importance here. Pursuant to the agreement (*ibid.*) (underlining in original):

> [T]he Licensor, Zoomers, hereby grants to the Licensee, RII a non-exclusive license to make, use sell and offer for sale RII Vertex® training swim fins as they now exist, only. The license does not include the right to make, use, sell, or offer for sale ZOOMERS® training swim fins.

In exchange (*ibid.*):

> The Licensee shall pay to Licensor as a royalty the sum of Two Dollars ($2.00) for each pair of RII Vertex® training fins sold by the Licensee. Royalty payments to the Licensor shall continue until the expiration of the Patents or termination of this Settlement.

Section 3(b) of the agreement defined the term of the license: "The license granted herein shall expire upon the expiration of the Patents" (*ibid.*).

The March 30 agreement also provided a mechanism in the event of a breach. In Section 6 of the agreement (*ibid.*):

> In the event of a material breach of the Settlement Agreement, the aggrieved party may provide written notice of the material breach of the breaching party. Such written notice shall specify the specific conduct which allegedly constitutes the material breach. Upon receipt, the breaching party shall have ten (10) days to cease the conduct which allegedly is causing the breach. If and only if the aggrieved party provides this written notice and the breaching party fails to cure the breach within said ten (10) days, the aggrieved party may then serve written notice of the breaching party of its decision to rescind this entire Settlement Agreement and shall comply with all procedures required by law to effectuates [sic] such a rescission.

And, in Section 7 (*ibid.*):

> In the event of a breach of this Settlement Agreement, and in the event that the aggrieved party does not rescind this Settlement Agreement in accordance with the procedures specified above, the aggrieved party shall nevertheless have the right to receive

---

[1] It is not clear why defendant waited until its reply papers to submit the settlement agreement. Nevertheless, both parties have previously submitted this copy of the settlement agreement, thus there is no worry that plaintiffs were surprised by its content.

2

> damages for the breach, as well as other remedies provided for by law. These remedies shall exist without regard to whether the aggrieved party has provided notice of the breach to the breaching party, except as otherwise required by law.

Finally, the agreement contemplated (*ibid.*):

> Upon execution by the parties hereto of this Settlement Agreement, Hull and Zoomers shall execute and file with the Court a Dismissal with Prejudice so as to dismiss RII from the Action. Said Dismissal shall be filed as soon as possible but no later than two business days after the execution of this Agreement.

Accordingly, on April 5, 1998, the parties submitted a stipulation to dismiss the action with prejudice pursuant to FRCP 41(a)(1) and the Court entered the dismissal on April 15. (Br. Exh. C).

According to plaintiffs, Rothhammer "has refused to pay royalties since at least March 21, 2000" (Opp. 9). Nevertheless, it appears plaintiffs did not act on this purported breach of the settlement agreement for at least five years. Indeed, the first plaintiffs alerted defendant to the disputed royalty payments was in a letter from plaintiffs' counsel Douglas Chaikan to Diane Rothhammer on January 15, 2004 (Chaikan Decl. Exh. A). In that letter, Mr. Chaikan informed Ms. Rothhammer, defendant's president, that "we have not received the quarterly royalty payment or statement from RII for some time. This time has now become significant and beyond ordinary tolerance" (*ibid.*).

\*          \*          \*

On November 1, 2005, plaintiffs filed a new complaint in the district court. In *this* action, plaintiffs again have alleged that Rothhammer infringed the '385 and '328 patents in violation of 35 U.S.C. 271. In addition, plaintiffs have alleged a claim for unfair competition in violation of California Business and Professions Code § 17200. Like the patent-infringement claim, plaintiffs have based the Section 17200 claim on allegations of "RII's deliberate copying and imitation of Plaintiffs' training fin devices" (Compl. ¶ 19).

Notably, however, plaintiffs have made *no* allegations in their current complaint about the settlement agreement or breach thereof. According to Attorney Chaikan, at a case management conference on February 16, 2006, this was due to his uncertainty as to what the

3

1  actual settlement agreement provided for given that he had lost all copies of the agreement
2  containing the signatures of both parties (Reply Br. Exh. 4):

> As I said, we are at least in part responsible, because in the process of moving, we had put our files into Bekins Storage in San Jose, and they had a flood or fire—I'm not sure which—or a combination of both, and we lost a substantial portion of our records.
>
> Unfortunately, as well, Microsoft Windows 95 was not as compatible with some of the newer versions and had some other problems, and we lost several computer files and some hard disks. But I did manage to save one hard disk, and, through the work of about five or six thousand dollars, they managed to restore some of the files.
>
> And you can see that this agreement, which is only signed by the defendant, came from a computer file, not from a hard copy file, and it was because we had transferred and scanned many of our records into our hard drives. And that's the only reason we have this at all, is because it was scanned into a hard drive, not because of hard copies.

By the time Attorney Chaikan re-created his records, he admitted "I ha[d] a serious question as to whether the statute of limitations may have run on the enforcement of the agreement" (*ibid*.).

For their part, defense counsel did little to aid plaintiffs or the Court in tracking down a copy of the agreement signed by both parties or in substantiating the copy of the agreement provided by Mr. Chaikan. For example, at the February 16 case management conference (*ibid*.):

> The Court: Let me ask a fundamental question. Do both sides agree this settlement agreement was signed by both sides back in 1996? What do you say?
>
> Defense Counsel Daniel Schein: We don't know, your Honor.
>
> The Court: You don't know?
>
> Mr. Schein: We don't know if this agreement is signed by both sides. It's only signed by the defendant. We believe it to be the one that our client signed. That's the best we can do. It's been ten years. My client looked at it, believes it's the one they signed.

Further (*ibid*.):

> The Court: Can you please answer my question? Is it your position that this settlement agreement was effective or not?
>
> Defense Counsel James Cai: Your Honor, if I may, we did have—believe we had a settlement, and the case was dismissed

United States District Court
For the Northern District of California

4

>with prejudice. The problem is our record only has one version of the settlement agreement with our client's signature on it without plaintiff's signature.
>
>The Court: Is that the same as this document?
>
>Mr. Schein: It's the one that was provided by Mr. Chaikan.

On December 15, 2005, defendant answered the complaint. Defendant also counterclaimed, seeking a declaration that defendant did not infringe the two patents-in-suit and that the patents were invalid. Plaintiffs answered defendant's counterclaims.

Thereafter, defendant filed the instant "motion to dismiss." Defendant maintains that the settlement agreement bars plaintiffs' current claims. Plaintiffs respond that the settlement agreement does not bar the instant action and also makes a cross-motion to amend the complaint so as to add a claim for breach of the settlement agreement. On a different issue, plaintiffs contend that the Court should exercise supplemental jurisdiction over their state-law claim for unfair competition as well as over this amended claim for breach of contract. To this proposed amended complaint, defendant maintains that the statute of limitations bars the contract claim and, in any event, no supplemental jurisdiction should be exercised. Finally, defendant seeks sanctions against plaintiffs and their counsel for filing the instant action.

**ANALYSIS**

Defendant moves to dismiss plaintiffs' complaint under FRCP 12(b)(6). "If matters outside the pleadings are considered, the motion to dismiss is to be treated as one for summary judgment." *San Pedro Hotel Co., Inc. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir.1998). Defendant's motion here requires consideration of materials outside of the complaint, in particular the settlement agreement. Accordingly, the instant motion is analyzed as one for summary judgment under FRCP 56.

Summary judgment shall be rendered if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c). Summary judgment is not granted if the dispute about a material fact is "genuine" — that is, if the evidence is such that a reasonable trier of fact could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

5

### 1. CLAIM PRECLUSION.

Under the doctrine of res judicata, or claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Jet, Inc. v. Sewage Aeration Sys.*, 223 F.3d 1360, 1362 (Fed. Cir. 2000) (*quoting Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)). Accordingly, "a second suit will be barred by claim preclusion if: (1) there is identity of parties (or their privies); (2) there has been an earlier final judgment on the merits of a claim; and (3) the second claim is based on the same set of transactional facts as the first." *Id*. at 1362–63.

### A. PATENT INFRINGEMENT.

Of course, a federal court has subject-matter jurisdiction over a claim for patent infringement. The problem in this case is that plaintiffs' patent claim is plainly barred by a previous accord and satisfaction.

Where a patent infringement suit has been dismissed with prejudice pursuant to a settlement agreement, the patentee cannot later sue on exactly the same patent for the same allegedly infringing device. *See Hallco Mfg. Co., Inc. v. Foster*, 256 F.3d 1290, 1297 (Fed. Cir. 2001). With respect to future infringement, however, a settling party does not waive its right to challenge future accused products absent a clear intent to do so. *See, e.g.*, *Foster v. Hallco Mfg. Co., Inc.*, 947 F.2d 469, 481–82 (Fed. Cir. 1991); *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1376 (Fed. Cir. 2002).

Here, the intent of the settlement agreement is clear. The license granted to defendant was stipulated to last until the expiration of plaintiffs' patents (Reply Br. Exh. A). As long as defendant continued to produce the same product, defendant was insulated by the settlement agreement for infringement claims for the patents at issue. This was a choice. Plaintiffs could have negotiated for a finite time period to the agreement. No such time period was established. Plaintiffs substituted a license right to receive royalties in place of its future rights under the patents.

Plaintiffs argue that defendant could only rely on claim preclusion "if RII was claiming the patent was invalid" (Opp. 8). Rather, the most basic application of claim preclusion

6

prevents plaintiff from suing for the exact same infringement of the exact same patent. The question, on the contrary, is whether the settlement agreement and accompanying license barred challenges to defendant's future products based on plaintiffs' patents. This order finds the agreement and license did.

Plaintiffs also argue that *Hallco* is inapposite because the royalties were fully paid in that case, whereas here defendant has purportedly fail to pay royalties. This simply means that plaintiffs may have a claim for breach of the settlement agreement under contract law, *not* that plaintiffs' patent-infringement claim is somehow alive again. Plaintiffs simply cannot bring a new patent-infringement claim about the same products and patents.

### B.    UNFAIR COMPETITION.[2]

This order also finds that plaintiffs' claim for unfair competition under Section 17200 is barred by claim preclusion. The parties ignore this issue in their briefing. Nevertheless this result seems obvious from the basic principles of claim preclusion.

Plaintiffs' unfair competition claim involves the same parties as the earlier patent-infringement claim. Moreover, dismissal with prejudice, even if pursuant to a settlement agreement, is a judgment on the merits. *Hallco*, 256 F.3d at 1294–95.

Moreover, the unfair-competition claim "is based on the same set of transactional facts" as the first patent infringement claim. *Jet*, 223 F.3d at 1362–63. As a basis for the Section 17200 claim, plaintiffs "reallege[d] and incorporate[d] by reference the allegations" underlying the new patent-infringement claim" (Compl. ¶ 18). Beyond this, plaintiffs merely have alleged that "RII's deliberate copying and imitation of Plaintiffs' training fin devices is an act of unfair competition" (*id*. at ¶ 19). Essentially, plaintiffs have re-clothed their patent-infringement claim under a different legal theory. "It will remain as clear as ever that a mere change in legal theory

---

[2] The parties dispute the Court's jurisdiction over this claim under the doctrine of supplemental jurisdiction. Plaintiffs' Section 17200 claim, however, is inextricable from plaintiffs' patent-law claim. Even where a plaintiff frames his or her complaint in terms of state law, "federal question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., ___ U.S. ___, 125 S.Ct. 2363, 2366 (2005). "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id*. at 2368. Plaintiffs' Section 17200 claim gives rise to federal jurisdiction under this test.

7

does not create a new cause of action." Wright and Miller, *Federal Practice and Procedure*, § 4407 (2d ed. 2002).[3]

Finally, as noted above, the terms of the settlement agreement manifest a clear intent to cover both past and future production of defendant's training fins. Thus, plaintiffs' Section 17200 claim is also barred both as to defendant's identical conduct prior to and after the settlement agreement.

This order must hasten to add that, as a matter of substantive law, it is doubtful that a Section 17200 claim could independently exist separate and apart from the patent claim. This order need not reach that issue, for the entire matter was concluded once and for all in the prior settlement.

### 2. BREACH OF SETTLEMENT AGREEMENT.

As noted above, plaintiffs did not assert a claim for breach of the settlement agreement in their complaint. On opposition to the instant motion, however, plaintiffs seek leave to amend the complaint to add such a claim.

This order finds that the jurisdiction over such a claim rests with the state court. In this context, the Federal Circuit has explained:

> [F]or disputes arising out of a settlement agreement that produces a stipulation of dismissal, when the terms of settlement are not included in the judgment the federal court normally does not have power to enforce the settlement terms.

*Cygnus Telecomms. Tech., LLC v. Totalaxcess.com, Inc.*, 345 F.3d 1372, 1374 (Fed. Cir. 2003) (*citing Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378–81 (1994)). There is an exception to this rule against federal jurisdiction:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

---

[3] Because of this order's disposition regarding plaintiffs' claims for patent infringement and unfair competition, defendant's counterclaims are dismissed as moot.

8

*Ibid*. "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id*. at 1375.

The question, therefore, is whether the dismissal order incorporated the settlement terms or otherwise indicated that the federal courts were retaining jurisdiction. The order indicated that (Br. Exh. C):

> On March 20, 1996, Plaintiff Dr. Martin P. Hull, an individual and aba Zoomers, a California Partnership, and Defendant Rothhammer International, Inc. entered into a Settlement Agreement setting forth terms and conditions releasing Defendant Rothhammer International, Inc. from this action.

No further mention of the settlement is made.

Plaintiffs contend that this reference to the settlement agreement is sufficient to incorporate the agreement's terms. Plaintiffs rely on *Cygnus*, *supra*, as support for their position. It is true that in *Cygnus*, the court found that the district court had ancillary jurisdiction to enforce the settlement agreement. *Cygnus*, 345 F.3d at 1376. But unlike the instant case, the dismissal order in *Cygnus* specifically included the monetary terms agreed upon by the parties:

> The parties having amicably resolved their differences, IT IS HEREBY STIPULATED by and between plaintiff Cygnus Telecommunications Technology, LLC and defendant Justice Telecom Corporation fka Justice Technology Corporation, that JUDGMENT be entered against Justice Telecom Corporation in the amount of FIFTY THOUSAND AND 00/100 DOLLARS ($50,000.00).

*Cygnus*, 345 F.3d at 1374. The terms of the parties' agreement were simply not so included in the dismissal order at issue here. That plaintiffs made no effort to relate this case to the earlier case shows how contrived this argument is.

Similarly, this case is not like *Schaefer Fan Co. v. J & D Mfg.*, 265 F.3d 1282, 1287–88 (Fed. Cir. 2001). In *Schafer*, the court found jurisdiction where the dismissal order indicated that it was pursuant to a settlement agreement which "itself expressly states that either party has a right to bring a motion before the district court to enforce the settlement agreement and seek equitable relief and damages." The parties' settlement agreement here makes no reference to

9

1   federal court. On the contrary, in Section 12 the parties provided that "[t]his Agreement shall
2   be construed under and governed by the laws of the State of California" (Reply Br. Exh. A).

3   Nor is this case like *Interspiro USA v. Figgie Int'l*, 18 F.3d 927, 930 (Fed. Cir. 1994),
4   another decision cited by plaintiffs. In *Interspiro*, much as in *Schaefer*, "the agreement
5   expressly provided that the district court would have 'jurisdiction over the implementation of or
6   disputes arising out of the settlement of this action for a period of two (2) years from the date of
7   execution hereof.'" Those simply are not the present facts.

8   Plaintiffs also misuse these authorities in another way. Plaintiffs suggest that "[i]t is the
9   parties' intent that must be clear." On the contrary, it is a court's intent to retain jurisdiction,
10  not the parties intent that matters. "[T]he *court* need only manifest an inferable intent to retain
11  jurisdiction." *Interspiro*, 18 F.3d at 930 (emphasis added). This accords with the long-standing
12  and basic principle that subject-matter jurisdiction cannot be conferred upon a court by consent
13  of the parties. *See, e.g.*, *Merrill v. Petty*, 83 U.S. 338, 346 (1872).

14  Here, nothing in the dismissal order invites an inference that our federal courts intended
15  to retain jurisdiction. This case is thus more akin to *National Presto Industries, Inc. v. Dazey*
16  *Corporation*, 107 F.3d 1576, 1583 (Fed. Cir. 1997). The dismissal order here at most refers to
17  the fact that a settlement agreement was entered into. Just as in *Dazey*, the order did not in any
18  way indicate that it was pursuant to the agreement. More importantly, the terms were not
19  included or even referenced. Certainly no terms were referenced which contemplated
20  continuing jurisdiction in the federal courts, given that no such provisions existed in the
21  agreement.[4]

22                          *           *           *

23  This order, by no means, leaves plaintiffs without a remedy. Plaintiffs are free to file
24  their claim for breach of the settlement agreement in state court. Defendant is and will remain

---

[4]Supplemental jurisdiction still could theoretically extend to breach of the agreement in virtue of the Court's subject-matter jurisdiction over plaintiffs' claims for patent infringement and unfair competition. As noted above, however, defendant is hereby granted summary judgment as to those claims. A district court may decline to exercise supplemental jurisdiction over a state-law claim if, as here, it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. 1367(c)(3). Declining jurisdiction seems particularly appropriate where a plaintiff's only federal claims were ill-fated. *See, e.g., Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 780–81 (Fed. Cir. 1996), *as amended*, 104 F.3d 1296 (Fed. Cir. 1996).

1  estopped from reversing field and denying the existence or the veracity of the settlement
2  agreement which defendant has used as a shield in this Court.  According to defendant, "[t]he
3  terms of the Settlement Agreement specifically bar this action" (Reply Br. 1–2).  Then, at
4  hearing on the instant motion, defense counsel categorically agreed that the settlement
5  agreement was effective.  Once this controversy lands in state court, defendant should not be
6  allowed to go back on that position.  Moreover, defendant's argument regarding the statute of
7  limitations is specious.  California provides a statute of limitations of four years for breach of
8  contract claims.  Cal. Civ. Proc. Code § 337(1).  Any royalty payments that defendant failed to
9  make under the settlement agreement within that time period are still viable.  This Court,
10 however, has no jurisdiction to resolve any dispute over those non-payments.

**3. SANCTIONS.**

Because both sides have made frivolous arguments and tried to have it both ways, neither side is entitled to the benefit of any sanctions.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is **GRANTED**. Plaintiffs' proposed claim for breach of the settlement agreement is **DISMISSED** as no subject-matter jurisdiction exists to resolve such a claim.  This case is over in the federal court (without prejudice to refiling, as above stated, in state court).  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: April 13, 2006

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE